**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ESTECH SYSTEMS, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:20-cv-00123-JRG-RSP |
| | § | (LEAD CASE) |
| TARGET CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION

Before the Court are three motions:

- Motion to Strike Defendants' Improper Second Invalidity Expert Report ("Motion to Strike Expert Report"), filed by Estech Systems, Inc. ("Estech"). Dkt. No. 262. Estech moves the Court to strike portions of Dr. Walt Magnussen Jr.'s (non-movant's expert) amended expert report. The Motion to Strike Expert Report is **GRANTED**.

- Motion to Strike George Platt, Douglas Boyd, and William Hall from Estech's Witness List or in the Alternative to Limit Testimony ("Motion to Strike Estech's Witnesses"), filed by Defendants Target Corporation, PlainsCapitalBank, BOKF, National Association, BBVA USA, Wells Fargo & Co., and Wells Fargo Bank, N.A. (collectively, the "Defendants"). Dkt. No. 236. Defendants moves the Court to strike George Platt from Estech's trial witness list.[1] Motion to Strike Estech's Witnesses is **GRANTED**.

- Motion to Exclude Portions of the Testimony of Justin R. Blok ("Motion to Strike Blok"), filed by Defendants. Dkt. No. 190. Defendants move to strike certain opinions of Mr. Justin

---

[1] On June 30, 2021, the Court heard oral argument from the parties regarding this motion. During the course of the oral argument Estech stated that it only wished to call George Platt live at trial. Accordingly, the Court will focus its analysis on Mr. Platt (and not Mr. Douglass Boyd or Mr. William Hall).

R. Blok's expert report. The Motion to Strike Blok is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    BACKGROUND

In April 2020, Estech filed the present lawsuit asserting that Defendants infringe U.S. Pat. Nos. 6,067,349 ("'349 Patent"), 7,068,684 ("'684 Patent"), 7,123,699 ("'699 Patent"), and 8,391,298 ("298 Patent") ("patents-in-suit"). *See e.g.* Dkt. No. 1. Estech alleges the voice over internet protocol ("VoIP") telephone systems used by the Defendants infringe the patents-in-suit. *Id*.

On February 15, 2021, Defendants moved this Court for leave to amend their invalidity contentions. Dkt. No. 137 at 2.[2] Defendants sought leave to supplement their invalidity contentions with previously known prior art references which became relevant due to information discovered during the January deposition of Mr. Eric Suder, Estech's founder. Dkt. No. 235 at 6. On March 3, 2021, during the briefing period of the motion for leave to amend invalidity contentions[3], Defendants filed a motion for leave to amend their answer[4]. Dkt. No. 142. By April 1, 2021 the briefing of both motions completed. *See* Dkt. No. 235 at 3 n. 2, 3.   On May 28, 2021, the Court issued its rulings on these motions. *Id*. The Court permitted Defendants to amend their contentions with respect to the Computer Telephony Magazine article and the IVX references but denied Defendants' motion to amend their defenses. *Id*. at 1–2.

On March 17, 2021, during the briefing period of the motion for leave to amend defenses, the parties exchanged opening expert reports, which included Dr. Magnussen's report on

---

[2] Citations are to document numbers and page numbers assigned through ECF.
[3] On February 15, 2021, Defendants filed their Motion for Leave to Amend their Invalidity Contentions. Dkt. No. 137. On March 1, 2021, Estech filed its Response to the Motion to Amend Invalidity Contentions. Dkt. No. 141. On March 9, 2021, the Defendants filed their Reply. Dkt. No. 147. Estech did not file a sur-reply.
[4] On March 3, 2021, Defendants filed their Motion for Leave to Amend their Answers to the Complaints. Dkt. No. 142. On March 17, 2021, Estech filed its Response to the Motion to Amend Answers. Dkt. No. 157. On March 25, 2021, the Defendants filed its Reply. Dkt. No. 160. On April 1, 2021, Estech filed its Sur-Reply. Dkt. No. 167.

invalidity. *Id*. On April 7, 2021, Defendants served Dr. Magnussen's supplemental invalidity report based on Estech's deposition of Cisco Systems, Inc. Dkt. No. 274 at 2. When Dr. Magnussen's opening and supplemental reports were served, no invalidity theories based on the Computer Telephony Magazine article were presented, but he did include invalidity theories based on the IVX references, as well defenses (improper inventorship and inequitable conduct) that Defendants were simultaneously seeking leave to add. Dkt. No. 262 at 4–5.

Shortly after the Court issued its rulings on the motions seeking leave, Defendants filed a motion for reconsideration. Dkt. No. 243. On June 18, 2021 at 9:27 p.m., Defendants served additional invalidity theories from Dr. Magnussen which now included invalidity theories based on the Computer Telephony Magazine article. Dkt. No. 262 at 4. His supplemented report added 282 new paragraphs of theories, which is—by the Court's estimation—roughly 65 new pages. Dkt. No. 262-2; *see* Dkt. No. 262 at 4. On June 25, 2021, Defendants' reconsideration motion was denied. Dkt. No. 273.

On June 30, 2021, the Court heard oral argument on the Motion to Strike Estech's Witnesses and the Motion to Strike Expert Report. Dkt. No. 278.

## II.    LEGAL STANDARDS

### A.    *Daubert* Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

3

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme

4

Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## B.    Expert Reports

An expert required to provide a written report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Parties must provide their expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Fed. R. Civ. P. 37 sets the consequences of untimely or insufficient disclosure by a party: "[T]he party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This is true, "[r]egardless of the character of a report." *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-cv-01470-JRG-RSP, 2018 U.S. Dist. LEXIS 7211, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (citing Fed. R. Civ. P. 37(c)(1)); *see also Hernandez v. Rush Enters.*, 4:19-cv-00638-ALM, 2021 U.S. Dist. LEXIS 42404, *8, 2021 WL 857987 (E.D. Tex. Mar. 8, 2021) ("If the disclosure is untimely, the Court maintains broad discretion to exclude the expert report as a means of enforcing a pretrial order.").

However, "the Court may grant leave to disclose a supplemental expert report after the deadline in the Scheduling Order has expired for good cause." *Hernandez*, 2021 U.S. Dist. LEXIS 42404 at *8. When determining substantial justification or harm, courts consider "(1) the explanation for the failure . . . ; (2) the importance of the testimony; (3) potential prejudice in

allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990).

### C.     Witness Exclusion

Rule 26 (a)(1)(A)(i) provides:

> (a) Required Disclosures.
>      (1) Initial Disclosure.
>           (A) In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated *or ordered by the court*, a party must, without awaiting a discovery request, provide to the other parties: . . . .

(emphasis added). Thus, the rules governing Rule 26 initial disclosures can be modified by a Court order. In this case the Court entered a Discovery Order that indeed heightened the initial disclosure requirements under Rule 26(a)(1). *See* Dkt. No. 67 ⁋ 1; *see also* Dkt. No. 67 ⁋ 8.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure *was substantially justified or is harmless*." Fed. R. Civ. P. 37(c) (emphasis added). Rule 37 "empowers the courts to impose sanctions for failures to obey discovery orders." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). "Rule 37 only requires the sanction the Court imposes hold the scales of justice even." *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981) (internal quotation marks and citation omitted).

Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 U.S. Dist. LEXIS 65662, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019). These factors are: "(1) [the untimely party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a

continuance." *CQ*, 565 F.3d at 280. Failure to provide any justification for its untimely disclosure weighs heavily in favor of striking the disclosure and may even be sufficient standing alone to support exclusion. *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012).

III.     ANALYSIS

A.     Motion to Strike Expert Report (Dkt. No. 262)

Estech seeks to strike the second invalidity report of Dr. Magnussen. Dkt. No. 262 at 4. Estech argues that "Defendants' Second Report is a new expert report that introduces entirely new opinions that could have and should have been disclosed by the ordered deadline for opening expert reports." *Id*. at 6.

1.     Explanation for Delay

Estech argues that "[t]here is no valid explanation for Defendants' failure to include the *Computer Telephony Magazine* in Dr. Magnussen's expert report." *Id*. at 8. Estech states that "Defendants knew about the *Computer Telephony Magazine* reference at least one month before the deadline to file the initial expert report" but "made the tactical decision to not include the *Computer Telephony Magazine* art the first time around." *Id*.

Defendants argue that because "the operative invalidity contentions did not include any reference to an invalidity theory based on Computer Telephony Magazine" Dr. Magnussen could not have supplied invalidity theories based on the Computer Telephony Magazine article. Dkt. No. 274 at 5.

The Court finds that Defendants do not have an adequate explanation for their delay. Defendants knew of this reference well before opening expert reports were due and made the conscious decision not to include invalidity theories based on Computer Telephony Magazine

7

article. Further, Dr. Magnussen did include invalidity theories (as well as defenses) based on the IVX references, which were not part of the invalidity contentions when the opening reports were due. The Defendants made strategic choices about what they perceived was most important to their case. During the oral argument, Defendants were not able to provide a reasonable explanation for Dr. Magnussen's failure to include the Computer Telephony Magazine invalidity theories in his report.[5] Defendants cannot be rewarded for their failure to include these invalidity theories, particularly in view of their decision to include others which were not part of the case at the time.This factor strongly weighs against allowing Defendants to supplement Dr. Magnussen's report.

2.      Importance of Testimony

Estech contends that Defendants have in effect admitted "that the new opinions in the Second Report are not important to their case, because Dr. Magnussen could have included them in his initial report but chose not to." Dkt. No. 262 at 9.

Defendants maintain that the Computer Telephony Magazine invalidity theories are critical to their defense. Dkt. No. 274 at 5.

The Court finds that the Computer Telephony Magazine article may be somewhat important to the Defendants' defense. Again, Defendants' assertion that the Computer Telephony Magazine article is vital to their defense is severely undercut by Defendants' decision not to initially include invalidity theories of the Computer Telephony Magazine article. So the importance of this reference weighs very slightly toward allowing the additional opinions.

---

[5] The Court commends the Defendants for their candor during oral argument, but cannot support the position that Defendants had an adequate explanation for the delay.

3.    Prejudice

Estech argues that it "would suffer undue prejudice if the Court does not strike the Second Report." Dkt. No. 262 at 9. Estech states that the timing of Defendants' supplementation "just weeks before trial would cause Estech prejudice because it would have to expend its resources on exploring Dr. Magnussen's new opinions instead of preparing its case for trial." *Id.*[6]

Defendants counter that any prejudice to Estech is minimal. Defendants argue they mitigated any potential prejudice by "providing redlines, identifying exactly what changes had been made, and setting forth a range of deposition availability." Dkt. No. 274 at 5. Defendants also argue that any prejudice is attributable to Estech's actions, not their own. *Id*. at 5–6. ("Had [Estech] taken Dr. Magnussen's deposition when offered, no prejudice would have existed and no continuance would have been needed. Instead, by declining, Estech has created a much larger problem where one need not have occurred; any alleged prejudice is by Estech's own making.").

There is substantial prejudice that heavily weighs in favor of excluding Dr. Magnussen's supplementation. When the Court granted Defendants' motion to amend its invalidity contentions it did so believing that "there is not a significant need (if any) for additional fact discovery or expert discovery." It appears that, with respect to the Computer Telephony Magazine article, there was still significant expert discovery that had not taken place. Dkt. No. 235 at 9. Defendants served Dr. Magnussen's theories on the Computer Telephony Magazine article (adding roughly 65 pages worth of material) at approximately 9:30 p.m. Central Time on Friday, June 18, 2021 while at the

---

[6] Estech alleges that it "would be prejudiced by the Second Report because it seeks to give Defendants a second bite at the apple for their invalidity case." Dkt. No. 262 at 10 ("After having seen Dr. Magnussen's deposition, and the strategies and arguments that Estech employed in its rebuttal case against Dr. Magnussen's theories, Defendants now attempt to plug the holes in his initial report with the benefit of hindsight."). The Court need not address whether this contention is true or not.

same time noticing Dr. Magnussen's deposition availability for the following Tuesday or Thursday. Dkt. No. 274-1 at 2. It is hard not to see the prejudice in that schedule.

Further, while Defendants contend they have a good explanation, they do not address the impact of serving 65 pages of additional invalidity theories on Estech. Defendants likely side-step this point because they know Estech, the Defendants, and this Court would have to expend significant resources to resolve the resulting issues that would arise from permitting Dr. Magnussen's supplemental report. This matter is scheduled for trial in several weeks, allowing Dr. Magnussen to amend his report by roughly a third, would cause substantial prejudice to Estech — particularly considering Defendants do not contend a continuance is necessary. Dkt. No. 274 at 5. If the Court were to allow Dr. Magnussen's supplementation he would need to be deposed (which would require scheduling a mutually agreeable date for the parties), Estech's expert(s) would need to draft a rebuttal report, and this Court would need to quickly resolve the inevitable 11th hour disputes that would result from Dr. Magnussen's supplementation. While issues related to Dr. Magnussen's amendment are being resolved, this case is on the precipice of trial. There is significant prejudice to Estech.

4.      Continuance

Estech contends this factor weighs against allowing Defendants' supplemental report because "the parties are 42 days away from trial, and a continuance would unfairly delay Estech's day in court." Dkt. No. 262 at 10.

Defendants respond that no continence is necessary if "the report is permitted to stand." Dkt. No. 274 at 6.

The Court is not convinced that a continuance would not be necessary. Should Defendants' report be permitted to stand, then Dr. Magnusson would be required to sit for a deposition and

would inevitably result in further motion practice. This factor weighs against allowing supplementation.

### B.    Motion to Strike Estech's Witnesses (Dkt. No. 236)

Defendants argue that the addition of George Platt to Estech's witness list is not substantially justified or harmless and should be stricken. Dkt. No. 236 at 3. Estech counters that the Defendants were adequately noticed regarding the topics George Platt would be competent to testify about, thus his inclusion on Estech's witness list is harmless. Dkt. No. 256 at 4.

#### 1.    Explanation for Disclosure Failure

Defendants argue Estech failed to name George Platt, Estech's CEO, in their initial Rule 26(a) disclosures and "left Defendants in the dark as to [his] relevance to the dispute." Dkt. No. 236 at 5. They contend Estech "chose to wait until months after the close of fact discovery to disclose . . . [that] Estech intends to call [Mr. Platt] during trial." *Id*. Defendants also contend "[t]here is no excuse for Estech's failure to include these witnesses on their 26(a)(1) Disclosures and Estech did not even try to explain why it chose to make these additions to Defendants for the first time in their pretrial disclosures." *Id*. at 6.

Estech argues that since Defendants had deposed the individuals it added to its witness list, it was absolved of all obligations to amend its Rule 26(a) disclosures. Dkt. No. 256 at 6. In particular, Estech relies upon the language in Rule 26(e)(1)(A) as well as other district court cases to support its position. *Id*. ("Under the Court's controlling precedent, that access satisfies Rule 26(e)(1)(A) because the information has otherwise been made known to the other parties during the discovery process.") (internal quotations omitted) (citing *Better Mouse Co., LLC v. SteelSeries ApS*, No. 2:14-cv-198-RSP, 2016 U.S. Dist. LEXIS 186922, at *7 (E.D. Tex. Jan. 7, 2016)).

Estech misunderstands its duties under this Court's Discovery Order. Dkt. No. 67 ¶ 8; *see United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366-JRG-RSP, 2019 WL 7041725, at *3 (E.D. Tex. Dec. 20, 2019). Here, Estech has taken the position that it has no requirement to update its Rule 26(a) disclosures and provides little explanation for its failure to update its initial disclosures. Though there may be some flexibility on what may constitute a disclosure, and in some cases there may be a certain degree of leniency depending on the explanation offered for a delay, Estech offers none. Estech has a duty to update its Rule 26(a) disclosures and it has failed to do so. Dkt. No. 67 ¶ 8.

This case is distinguishable from Estech's cited precedent[7] because in the cited cases the default Rule 26(e)(1)(A) was not changed by Court Order. *See Mosser v. Aetna Life Ins. Co.*, No. 4:15-cv-430-ALM-KPJ, Dkt. No. 20 (E.D. Tex. Oct. 9, 2015); *see also Realtime Data LLC v. Echostar Corp.*, No. 6:17-CV-00084-JDL, Dkt. No. 64 (E.D. Tex. Oct. 5, 2017). The Discovery Order in this case imposes an affirmative duty to update Rule26(a) disclosures unlike permissive Rule 26(e)(1)(A). *Compare* Dkt. No. 67 ¶ 8 *with* Fed. R. Civ. P. 26(e)(1)(A); Fed. R. Civ. P. 26(e)(1)(B). As of the time this Order is entered it is unclear whether Estech has updated its Rule 26(a) disclosures. Accordingly, this factor weighs in favor of striking Mr. Platt.

### 2.    Importance of the Evidence

Defendants argue that "Estech cannot show the importance of the missing witnesses' testimony." Dkt. No. 269 at 7. Defendants contend that any statement that Mr. Platt is important is undercut by Estech's failure to affirmatively place Mr. Platt on their disclosures, or otherwise secure his testimony. Dkt. No. 236 at 8 ("Had [Mr. Platt] been a more vital or critical part of

---

[7] Estech cites *Better Mouse Co., LLC v. SteelSeries ApS*, No. 2:14-cv-198-RSP, 2016 U.S. Dist. LEXIS 186922, 2016 WL 7665908 (E.D. Tex. Jan. 7, 2016) but that is not relevant. The Court in *Better Mouse Co.* addressed whether specific expert opinions were disclosed, which is not relevant on whether Estech has a duty to update its Rule 26 disclosures.

Estech's trial strategy, they would have been disclosed from the beginning of fact discovery or at least after Defendants deposed them.").

Estech counters that "the importance of these witnesses' testimony is undisputed. As Defendants acknowledge, Mr. Platt was one of Estech's corporate representatives . . . ." Dkt. No. 256 at 8.

The Court is unpersuaded by Estech's assertion regarding the importance of Mr. Platt. Based on the Court's review of Mr. Platt's deposition testimony[8], the Court finds that Mr. Platt's testimony is of little importance. Mr. Platt was exceedingly evasive during his deposition and refused to give simple answers to simple questions. *See e.g.* Platt 30(b)(1) Tr. 92:11–93:13 (Mr. Platt, Estech's CEO, allegedly not understanding what "subsidiary" or "sister company" means), 28:5–29:16 (Mr. Platt refusing to answer what some of the features of Centel phones are), 34:12–40:5 (Mr. Platt refusing to answer how the eSIP 50 phone functions). Despite being Estech's CEO, he appears to be generally unknowledgeable about many of the questions asked of him, so it is not clear what, if any, value Mr. Platt's testimony could offer to Estech. Indeed, Mr. Platt's testimony is replete with what this Court finds to be sarcasm, insincere ignorance, and disrespect for seriousness for these proceedings. This factor weighs heavily in favor of striking Mr. Platt.

### 3.    Prejudice

Defendants contend they would be greatly prejudiced if Mr. Platt is permitted to testify live at trial. Dkt. No. 236 at 7. Defendants claim they built their trial strategy base on Mr. Platt's deposition testimony as well as Estech's failure to designate Mr. Platt. *See id*. Defendants also

---

[8] Mr. Platt's deposition is concerning. Mr. Platt's 30(b)(1) and 30(b)(6) transcripts will be filed in the record as an appendix to this Order. Throughout Mr. Platt's depositions, Estech's attorney made speaking objections to an excessive number of the Defendants' questions, which had the effect of either coaching the witness or encouraging Mr. Platt to give evasive and unresponsive answers. *See e.g.* Platt 30(b)(1) Tr. 27:21–28:21, 31:10–33:8, 73:25–75:6, 87:8–89:10, 89:22–92:10, 121:21–122:10. In the future, Estech's attorneys are directed to refrain such behavior.

contend that "Estech [] seeks to have Mr. Platt recant his ignorance and testify anew as to facts Estech now knows it needs to support the house of cards that is its damages case." *Id*.

Estech argues that Defendants have suffered no prejudice because "Defendants deposed each of the witnesses well before the close of the discovery period, never complaining about any alleged insufficiency of Estech's initial disclosures. Defendants have had ample access to and knowledge of these witnesses since at least last November." Dkt. No. 256 at 7.

Defendants would be significantly prejudiced by permitting Mr. Platt to testify live at trial. Since Estech never updated its Rule 26(a) disclosures and Mr. Platt did not provide a good faith deposition, Defendants were not provided adequate notice of the topics Mr. Platt would be competent to testify about. *See Lobato v. Ford*, No. 1:05-cv-01437-LTB-CBS, U.S. Dist. LEXIS 65574, *16, 68 Fed. R. Serv. 3d (Callaghan) 1530 (D. Colo. Sept. 5, 2007) ("While a party is not necessarily required to provide a minute recitation of the putative witness' knowledge, the Rule 26(a)(1)(A) disclosure should indicate briefly the general topics on which such persons have knowledge." (internal quotations omitted) (citing Advisory Committee Notes to 1993 Amendments to Rule 26(a)(1)(A))). Though Defendants did depose Mr. Platt, his answers were so evasive that the full scope of the topics and facts that Estech now contends Mr. Platt is (or should obviously have been) knowledgeable about was not made clear. Allowing Mr. Platt to testify would cause significant prejudice and this factor weighs in favor of striking Mr. Platt.

### 4.     Availability of a Continuance

Defendants argue that a continuance could not cure the prejudice caused by allowing Mr. Platt to testify. Dkt. No. 236 at 7. They contend trial is quickly approaching and simply taking additional depositions would not suffice, they argue it would cause greater prejudice. *See id*. at 7.

Estech contends a continuance is unnecessary. Dkt. No. 256 at 8.

14

A continuance is not necessary in this case and the Court does not believe that this factor weighs in favor of either party. Therefore, this factor is neutral.

Accordingly, Mr. Platt is **STRICKEN** from Estech's witness list.

### C.    Motion to Strike Blok (Dkt. No. 190)

Defendants move the Court to strike certain opinions of Mr. Blok, because (1) Mr. Blok's "opinions should be excluded on the ground that Estech failed to disclose [the facts of Mr. Platt's interview] during the fact discovery period," (2) "Mr. Blok's apportionment theory is flawed because it relies upon "facts" from two unreliable and speculative sources: an interview of George Platt, Estech's CEO and President; and a "survey" based on a pilot program of VoIP technology," and (3) "Mr. Blok relies on only the more favorable of the two settlement agreements." Dkt. No. 190 at 5–6.

### 1.    Mr. Blok's Reliance on "Interview of Mr. Platt"

Defendants argue that "Mr. Blok's reliance on the 'Interview of Mr. Platt' should be stricken as undisclosed during the fact discovery period and as a Rule 37 sanction" because "Estech did not produce by document, testimony, or interrogatory response the information that Mr. Blok relies upon to calculate his proposed reasonable royalty." Dkt. No. 190 at 18 (citing *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 6886957, at *2 (E.D. Tex. Nov. 7, 2015)). Defendants submit that "[n]ot once did Estech identify the Open Mortgage Settlement as relevant to the damages issues in this case, despite numerous explicit requests by Defendants to do so, across a variety of discovery mechanisms." *Id*. at 19. Defendnats assert that they "explicitly requested in fact discovery the very information Estech subsequently introduced through an interview with Mr. Blok. But Estech refused to provide substantive responses." Dkt. No. 216 at 4. Defendants contend it is this behavior that prejudices them and requires the Court to

impose Rule 37 sanctions. Defendants assert they detrimentally relied on Mr. Platt's testimony, during his 30(b)(6) and 30(b)(1) depositions, that neither Estech nor Mr. Platt had any non-privileged personal knowledge of the Open Mortgage Settlement negotiation. *Id*. at 4–5.

Estech argues that the Defendants mischaracterize Mr. Platt's testimony and that "[t]there is nothing inconsistent between [Mr. Platt's answers during his deposition] and the interview conducted by Mr. Blok . . . ." Dkt. No. 207 at 7. Estech contends that Defendants "did not ask the right questions to elicit the answers they sought." Dkt. No. 225 at 2.

Estech is incorrect, Defendants accurately characterized Mr. Platt's deposition testimony. At the heart of the issue is Mr. Platt's deposition testimony. Mr. Platt's deposition as Estech's 30(b)(6) designee included the following exchange:

> Q: Who from Estech's side was involved in the negotiation of the Open Mortgage agreement?
> A: Our legal team was involved in all negotiations.
> Q: And when you say our legal team, do you mean outside counsel?
> A: Yes.
> Q: ***Was anybody from inside Estech[9] involved in the negotiation of the Open Mortgage agreement***?
> A: ***No***.

Dkt. No. 190-13 at 12–13. Mr. Platt unequivocally answered Defendants question that no one from "inside Estech [was] involved in the negotiation of the Open Mortgage agreement." *Id*. Based on Mr. Platt's response, Defendants switched to another line of questioning. *Id*. at 13. By answering in the negative, Mr. Platt told affirmatively told Defendants that neither he nor any Estech employee participated in the Open Mortgage Settlement negotiation. However, Mr. Platt told Mr. Blok a different tale, Mr. Blok describes his conversation with Mr. Platt as follows:

> A: We also talked about the settlement agreements, so with Open Mortgage and Regis, we talked briefly. ***We talked about his involvement in those negotiations,*** and I mentioned in my report that he left the negotiations up to counsel. ***But he was***

---

[9] During the course of Mr. Platt's interview he also establishes that he understands the difference between the role of outside counsel and an internal Estech employee. Platt Tr. 71:5–16.

*involved to the extent that, you know, he knew the consideration that was being contemplated, the basis of that consideration. He had input into, you know, the actual, I guess, the final terms of that agreement*. That's what I -- I vaguely remember. Again, I would defer to my report.

. . .

Q: Okay. And in your conversations with Mr. Platt, particularly surrounding the Open Mortgage and Regis settlements, did he convey to you whether he learned that information from someone else or was telling you from his personal knowledge?

A. What information are you referring to?

Q. Well, *you recall from your conversation with Mr. Platt that he had a belief as to the value of the 684 patent, right*?

A. *That's correct.*

Q. And that was based on negotiations with Open Mortgage; is that right?

A. I'm not sure I would characterize them as being based on the negotiations with Open Mortgage. I think our conversations were centered around *the fact that he was, you know, for lack of a better term, in the background of those negotiations and knew what was being discussed*. And, you know, the value -- I believe you're asking about *his understanding of the value of that technology that was being discussed in those agreements.* I don't know where he obtained that knowledge. *But as, you know, being the one person that was identified as being involved in those negotiations, that was his opinion of the value of each of the individual patents that were being discussed and those agreements were important.*

Dkt. No. 216-2 at 5 (emphasis added). It is apparent the information the Defendants were seeking from Mr. Platt was withheld but then later shared with Mr. Blok. This becomes particularly apparent in Mr. Blok's subsequent report. Dkt. No. 190-6 ¶¶ 66–69 (Mr. Blok discussing at length the circumstances and strategic business decisions/risk calculations considered by Estech during the negotiation of the Open Mortgage Settlement and attributing the source of his opinion to his conversation with Mr. Platt).

The Court finds that either Mr. Platt withheld, during his deposition, the details of his involvement in the negotiation (based on what was communicated to Mr. Blok) or Mr. Platt gained this knowledge after his deposition (and thus was unprepared for his earlier deposition). Indeed, Mr. Platt testified that the Open Mortgage Settlement negotiations were solely within the province of Estech's outside counsel, and he refused share his apparent knowledge of these negotiations,

despite being directly asked. The Court is unclear whether Mr. Platt intentionally withheld this information in bad-faith or did not answer based on the assertion of attorney-client privilege. Dkt. No. 190-13 at 12–13. In either case, Mr. Blok cannot rely on his interview with Mr. Platt to support his opinions.[10] Most (though not all) of the information given to Mr. Blok during Mr. Platt's interview was withheld during discovery, in violation of Rule 37. To the extent Mr. Platt withheld his knowledge based on the attorney-client privilege, he cannot later relay that privileged information to Mr. Blok so that Mr. Blok can establish Estech's damages model; to do so would be using the attorney-client privilege as both a shield and sword. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP, 2017 U.S. Dist. LEXIS 160562, *8-9, 2017 WL 2869344 (E.D. Tex. Apr. 19, 2017). Accordingly, Mr. Blok's opinions that are supported by "Interview of Mr. Platt" and tied to Mr. Platt's withheld knowledge of the Open Mortgage Settlement negotiations are **STRICKEN**, which includes but is not necessarily limited to Dkt. No. 190-6[11] ¶¶ 65–68, 71–72, 76–77, 79, 81, 89, 93, 125, 130, 138–139. At the next pretrial conference, Estech may move the Court to reconsider any portions of the stricken paragraphs that Estech can demonstrate do not truly rely on the "Interview of Mr. Platt."

    2.     Mr. Blok's Apportionment Theory

        i.     Interview of George Platt

In view of the Court's previous ruling on Mr. Platt's testimony, this issue is **MOOT**. The parties are invited to notify the Court by the next pretrial conference of any live issues the parties believe the Court should reconsider. The Court will not consider any issues not appropriately raised by that time.

---

[10] During the course of Mr. Blok's deposition, he states that he did not review Mr. Platt's deposition testimony prior to writing his report. Thus, "Mr. Platt's Interview" is the only source of Mr. Platt's knowledge that Mr. Blok received.

[11] Mr. Blok wrote reports for each Defendant, the Court's Order applies to those reports as well.

Mr. Blok's apportionment analysis is flawed because it relies on evidence that was withheld during discovery (i.e. Mr. Platt's knowledge of the Open Mortgage Settlement negotiations). If Mr. Blok's opinions rest on other evidence, disclosed during discovery, those opinions may be allowable. This issue should be raised at the next pretrial conference.

ii.      Culleton Study

To apportion the value individually attributable to the '349 Patent, '699 Patent, and '298 Patent, Mr. Blok relied a 2006 research paper titled "Evolution of Voip Technologies As a Replacement for Traditional Pstn Based Pbx Systems" ("Culleton Study"). Dkt. No. 190-6 ¶ 126. "Appendix 1 lists the results of the respondents' survey as to whether certain phone features are: 'must have,' 'nice to have' or 'not needed.'" Dkt. No. 190 at 15.

Defendants argue that Mr. Blok cannot rely on this research paper for two reasons: (1) Mr. Blok is unknowledgeable about the methodologies employed in the Culleton Study and (2) the technical features of the Culleton Study are not tied to the claimed invention. *See id*. Defendants submit that "Mr. Blok cherry picks features outlined in the Irish Survey that he believes were covered by the remaining three patents to come up with an 'estimated value allocation' for each of them." *Id*. (citing Dkt. No. 190-6 at 81–82). Defendants also argue that "Mr. Blok has no credible evidence that the features contained in the [Culleton Study survey] are tied to the technology disclosed in the asserted claims of the '349 Patent, '699 Patent, or '298 Patent." Dkt. No. 190 at 16. Defendants assert that the survey results are not closely tied enough to the asserted claims to serve as a basis for Mr. Blok's opinion. *See id*.

Estech argues that Mr. Blok's opinions on the Culleton Study should not be stricken because "Mr. Blok used the results of the study of user requirements for features and functionalities to estimate the relative weighting of the remaining patents-in-suit, and confirmed the conclusions

in the study with Estech's technical expert, Dr. Madisetti." Dkt. No. 207 at 9. Estech argues that the Defendants "mischaracterized" and incorrectly summarized Mr. Blok's opinions. *Id*. at 10. Estech asserts that the "Culleton Study is 'tied to the alleged advantageous technical characteristics of the patents-in-suit,' for example, VoIP phone directories, VoIP quality of service, and VoIP voicemail, and these VoIP characteristics are the technical subject matter of the patents-in-suit . . . ." *Id*. at 12 (internal citation omitted); *see also id*. at 13 ("Any reasonable trier of fact—and especially an expert or person of skill in the art— would easily be able to compare the survey with the patents-in-suit and understand that they share a common technical field . . . .").

Mr. Blok's use of the Culleton Study is sufficiently tied to the relevant technology to pass *Daubert* muster. The features selected by Mr. Blok are the same or similar features discussed in the patents-in-suit. *Compare* Dkt. No. 207-8 at 2 *with* Dkt. No. 207-7 at 3. Mr. Blok has narrowly tailored his opinion to the features listed in the patents, which was consistent with Mr. Madisetti's conclusions. Dkt. No. 190-19 at 4. There may be questions regarding how well the Culleton Study can be applied to the facts of the current case, but that is best remedied thorough vigorous cross-examination—not exclusion.

Furthermore, Defendants' cited cases are unavailing. *Parallel Networks Licensing, LLC v. Microsoft Corp.*, 777 Fed. Appx. 489 (Fed. Cir. 2019) is inapplicable. *Parallel Networks* Court is concerned on whether survey results can be used as evidence for patent infringement, not damages. Here on the issue of damages survey results can be used as relevant evidence of consumer demand. With respect to *Blue Spike v. Huawei Techs. Co.*, No. 6:13-cv-679-RC, 2016 U.S. Dist. LEXIS 199913 (E.D. Tex. Oct. 14, 2016), as discussed above there is no comparable analytical gap between the survey data and the apportionment theory; Dr. Madisetti has sufficiently tied the features of the patents-in-suit to the features discussed in the Culleton Study.

3.     Regus Settlement

Defendants argue "Mr. Blok's quantification of the reasonable royalty should be stricken because he entirely ignores the Regus Settlement." Dkt. No. 190 at 17. Defendants contend that "Mr. Blok's opinions are also unreliable because they ignore a second settlement Estech negotiated with Regus a few months after executing the Open Mortgage Settlement." Dkt. No. 190 at 17. Defendants claim that Mr. Blok's assessment that he had inadequate information surrounding the circumstances of the Regus Settlement Agreement to accurately opine on its applicability dooms his opinion because there was publicly available information that could have been used. *Id*. at 18.

Estech replies that "Mr. Blok determined, on the basis of his expertise, that this lack of actual information rendered the Regus Settlement 'limited' for purposes of establishing the reasonable royalty." Dkt. No. 207 at 15. Estech submits that Mr. Blok's opinion that he had insufficient information to opine on the Regus Settlement Agreement is proper considering someone with his experience and expertise. *See id*. at 16 ("From Mr. Blok's standpoint, such an exercise is of "limited guidance" because of its highly speculative nature. And the fact that Mr. Blok chose not to incorporate a guess into his damages calculation is hardly a basis for excluding his reasonable royalty opinion.").

Mr. Blok's opinion and quantification of the damages theory is not unreliable simply because he opines he does not have enough information about the Regus Settlement agreement to form an opinion. Defendants argument boils down to accusing Mr. Blok of arbitrarily "cherry-picking" the Open Mortgage Settlement Agreement over the Regus Settlement Agreement, but that is fodder for cross-examination. Defendants' experts feel differently, and they do opine on the Regus Settlement Agreement, as might be expected of rebuttal experts. This is a proper subject for vigorous cross-examination. But Mr. Blok's judgment that there is not enough evidence to form

an opinion about the Regus Settlement Agreement does not necessarily disqualify Mr. Blok's opinion of the reasonable royalty.

IV.      **CONCLUSION**

The Motion to Strike Expert Report is **GRANTED**. Motion to Strike Estech's Witnesses is **GRANTED**. The Motion to Strike Blok is **GRANTED** with respect to Dkt. No. 190-6[12] ¶¶ 65–68, 71–72, 76–77, 79, 81, 89, 93, 125, 130, 138–139. At the next pretrial conference, Estech may move the Court to reconsider any portions of the stricken paragraphs that Estech can demonstrate do not rely on the "Interview of Mr. Platt." In all other respects the Motion to Strike Blok is **DENIED**. The parties are also directed to move the Court not later than the next pretrial conference if there are remaining issues surrounding the Mr. Blok's apportionment theory as it relates to his use of interview of Mr. Platt.

**SIGNED this 21st day of July, 2021.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[12] Dr. Blok wrote reports for each Defendant, the Court's Order applies to those reports as well.